UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAKEISHA JORDAN, individually and on behalf of Y.F., a minor, : | |
| : | |
| Plaintiffs, : | Civil Action No.:   11-1642 (RC) |
| : | |
| v. : | Re Documents No.:   2, 5, 15 |
| : | |
| DISTRICT OF COLUMBIA *et al.*, : | |
| : | |
| Defendants. : | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE DISTRICT OF COLUMBIA'S MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART THE PSYCHIATRIC INSTITUTE OF WASHINGTON, D.C.'S MOTION TO DISMISS

### I. INTRODUCTION

When she was seven years old, Y.F. was taken into the custody of the District of Columbia's Child and Family Services Agency and admitted as an inpatient on the child psychiatric ward operated by the Psychiatric Institute of Washington, D.C., where, the plaintiffs allege, she was repeatedly restrained and erratically medicated with psychotropic drugs. Y.F. and her mother now bring common-law, statutory, and constitutional claims arising from her treatment. For the reasons discussed below, the court will grant in part and deny in part the defendants' respective motions to dismiss.

### II. FACTUAL AND PROCEDURAL BACKGROUND

In September 2006, Y.F. was taken from her home after the District of Columbia filed a petition for abuse and neglect of a minor child. Am. Compl. ¶ 13. She was taken into the physical custody of the District through its Child and Family Services Agency ("CFSA"), which is headed by Dr. Roque R. Gerald, and subsequently admitted as an inpatient on the child psychiatric ward operated by the Psychiatric Institute of Washington, D.C. ("PIW"). *Id.* ¶¶ 8,

13–15.  The District of Columbia, Dr. Gerald, and the Psychiatric Institute of Washington, D.C. have all been named as defendants by Y.F. and her mother, Lakeisha Jordan.  *Id.* ¶¶ 7–8, 10.

The plaintiffs allege that Y.F. was repeatedly and improperly restrained and isolated by PIW when she became angry or aggressive.  *Id.* ¶¶ 16–17.  Most instances of this treatment were allegedly undocumented, in violation of D.C. law.  *Id.* ¶ 17.  In some cases, PIW personnel consulted the CFSA regarding the appropriateness of Y.F.'s treatment.  *Id.* ¶ 18.  On other occasions, however, PIW did not consult the CFSA at all.  *Id.*  PIW personnel never solicited the consent of Ms. Jordan.  *Id.*

Y.F. was also medicated with a number of mood-altering drugs.  *Id.* ¶ 19.  The plaintiffs allege that her course of treatment was highly erratic: her "medications and doses were constantly changed," *id.*, "often fail[ing] to remain consistent for even five days at a time," *id.* ¶ 23.  Y.F. was often over-medicated, *id.* ¶¶ 19, 23, and was not appropriately monitored for side effects from the many drugs she was given, *id.* ¶¶ 23, 27.  Again, PIW personnel never consulted Y.F.'s mother, and, on a number of occasions, PIW never obtained approval from the CFSA.  *Id.* ¶¶ 19, 20, 24.  Over the course of seven months, Y.F. gained over fifty pounds and developed serious health risks.  *Id.* ¶ 27.  Y.F. continues to suffer psychological and physical harms resulting from her treatment.  *Id.* ¶ 28.

The plaintiffs now bring suit.  As the next friend of Y.F., Lakeisha Jordan alleges negligence under several theories, violations of Y.F.'s constitutional rights, and violations of the D.C. Mental Health Consumers' Rights Protection Act.  On her own behalf, Ms. Jordan alleges that the defendants failed to obtain her informed consent for her daughter's psychiatric treatment.  The defendants have filed motions to dismiss under Rule 12(b)(6).

## III. ANALYSIS

### A. Legal Standard for a Motion to Dismiss Under Rule 12(b)(6)

All that the Federal Rules of Civil Procedure require of a complaint is that it contain a "short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests.  FED. R. CIV. P. 8(a)(2), *see Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A court considering such a motion presumes the factual allegations of the complaint to be true and construes them liberally in the plaintiff's favor.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  It is not necessary for the plaintiff to plead all elements of her prima facie case in the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss.  *Id*.  A court need not accept a plaintiff's legal conclusions as true, *id.*, nor must the court presume the veracity of legal conclusions that are couched as factual allegations.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## B. The Court Grants in Part and Denies in Part the District's Motion to Dismiss

### 1. The Court Will Dismiss Y.F.'s § 1983 Claim Against Dr. Gerald

Dr. Gerald, who acts as the head of the D.C. Child and Family Services Agency, was originally named as a defendant in his individual capacity. *See* Compl. (caption). Yet the amended complaint does not suggest that Dr. Gerald had any personal involvement with Y.F.'s treatment. Instead, the amended complaint alleges that all acts committed by CFSA employees were committed "through" Dr. Gerald by virtue of his office. *E.g.*, Am. Compl. ¶ 19 ("While under the care and control of Defendants, Plaintiff was improperly medicated with psychotropic and other mood altering medications by Defendants PIW under the occasional consent of Defendant[ ] DC through . . . Defendant[ ] Gerald without informed consent."). Because the complaint does not contain any facts suggesting that Dr. Gerald played any personal role in the allegedly tortious or unconstitutional acts, all individual capacity claims against him must be dismissed. *See Jones v. Horne*, 634 F.3d 588, 602 (D.C. Cir. 2011) (affirming the dismissal of an individual-capacity suit against a government official because the plaintiff did not allege that the official had any involvement in the allegedly illegal conduct). And any claims against Dr. Gerald in his official capacity are merely duplicative of the claims against the District. *Grissom v. District of Columbia*, 853 F. Supp. 2d 118, 125 (D.D.C. 2012) (citing *Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 58 n.3 (D.D.C. 2011)); *see also Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996) ("When sued in their official capacities, government officials are not personally liable for damages.").

The court will therefore dismiss all claims against Dr. Gerald.

## 2. Y.F. Plausibly Alleges that the District Violated 42 U.S.C. § 1983

Y.F. seeks damages against the District under 42 U.S.C. § 1983.  The District may be held liable under § 1983 for the acts of its agents only if a plaintiff can show that: (1) she was deprived of a constitutional right; and (2) the deprivation was the result of a government policy or custom.  *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004); *see Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691–94 (1978).

### a. Y.F. Plausibly Alleges a Constitutional Violation

"[W]here the government assumes full responsibility for a child by stripping control from the family and placing the child in a government-controlled setting, the government has a duty not to treat the child with deliberate indifference."  *Smith v. District of Columbia*, 413 F.3d 86, 95 (D.C. Cir. 2005).  That duty is an element of substantive due process.  As the Supreme Court has explained, "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs . . . it transgresses the substantive limits on state action set" by the constitutional guarantee of due process.  *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).

Y.F. alleges that, after the District assumed custody of her, she was repeatedly and improperly restrained and isolated, and that she was erratically treated with powerful drugs causing severe side-effects.  The right to be free from bodily restraint is a core, constitutionally protected liberty interest.  *Turner v. Rogers*, 131 S. Ct. 2507, 2518 (2011) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)); *see also Reno v. Flores*, 507 U.S. 292, 316 (1993) (O'Connor, J., concurring) (noting that a child's constitutional right to be free from bodily restraint is no narrower than that of an adult); *Parham v. J.R.*, 442 U.S. 584, 600 (1979) (noting that a child has a "substantial liberty interest in not being confined unnecessarily for medical

5

treatment"). And constitutional due process also encompasses a "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." *Washington v. Harper*, 494 U.S. 210, 221 (1990); *see also United States v. Weston*, 255 F.3d 873, 874 (D.C. Cir. 2001).

Y.F. argues that the District was deliberately indifferent to her basic human needs when it failed to properly monitor and supervise her medical care, and failed to protect her from physical abuse (in the form of improper physical restraints) and other "conditions detrimental to her healthy growth and development." Am. Compl. ¶ 42–43.

The District does not contest the adequacy of Y.F.'s allegation that she was treated with deliberate indifference. Instead, the District argues that because it was PIW personnel who allegedly treated her that way, the District cannot be held liable. That is not necessarily so: the District could have been deliberately indifferent in its selection of PIW to care for Y.F. Where "'the need for . . . different' standards . . . in selecting and monitoring providers" of services to children in the District's custody is "'so obvious and the inadequacy so likely to result in the violation of [a child's] constitutional rights' that it amount[s] to a deliberately indifferent District policy," *Smith*, 413 F.3d at 98 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)), and that policy of deliberate indifference is a proximate cause of the constitutional injury, *id.* at 102, then the District can be held liable.

### b. Y.F. Plausibly Alleges that the District Employed a Municipal Custom or Policy Underlying the Plaintiffs' Constitutional Injuries

But the District argues that Y.F. has not adequately alleged a custom or policy of deliberate indifference in the selection of medical service providers. Y.F. argues that the District's alleged failure to oversee and regulate her treatment is evidence of such a policy or custom. Pl.'s Opp'n at 10–11.

At all relevant times, Y.F. was in the District's custody. Y.F. argues that the District was "responsible for monitoring the medical care of children" in its custody, and that it was charged with monitoring her treatment and care during her hospitalization. Am. Compl. ¶ 14. Y.F. alleges that she was subjected to improper physical restraints and seclusion, and that she was also forced to take powerful psychotropic drugs for medically inappropriate reasons. *Id.* ¶ 16–19. She alleges that the District never conducted any meaningful oversight over PIW, and never stepped in to reassess PIW's "extreme" course of medication. *Id.* ¶ 26.

From these allegations, the court may infer that the District's "need for . . . different" standards in selecting and monitoring its health care providers was "so obvious and the inadequacy so likely to result in the violation of constitutional rights" that it constituted a policy or custom of deliberate indifference to Y.F.'s rights. *See Smith*, 413 F.3d at 100 (citing *City of Canton*, 489 U.S. at 390); *see also Taylor v. District of Columbia*, 840 F. Supp. 2d 348, 354 (D.D.C. 2012) (plaintiffs plausibly alleged a District custom or policy of failing to supervise its foster care workers). Accordingly, Y.F. plausibly claims that the District may be held liable for her injuries under § 1983.[1]

### 3. The District Has Conceded Its Argument Regarding D.C. Code § 12-309

The District argues that the plaintiff failed to comply with D.C. Code § 12-309, which requires plaintiffs to provide prior notice of their intent to file suit.[2] The District maintains that the plaintiffs were required to do so while Y.F. was still being forcibly restrained and medicated.

---

[1] Because the court retains jurisdiction over Y.F.'s federal claim, it will exercise pendent jurisdiction over her District law claims, as well.

[2] The court notes that § 12-309 would not apply to the plaintiff's § 1983 claim. *See Brown v. United States*, 742 F.2d 1498, 1509–10 (D.C. Cir. 1984) (en banc). In addition, any failure to comply with § 12-309 does not affect the plaintiff's claim against PIW. *Parker v. Grand Hyatt Hotel*, 124 F. Supp. 2d 79, 95 (D.D.C. 2000) ("The court agrees with the plaintiffs that D.C. Code § 12–309 does not apply to private-sector defendants.").

In their opposition, the plaintiffs counter with the sensible argument that the plaintiffs were not required to comply with § 12-309's notice requirement until Y.F. was released from the defendants' control. If that is right, then the plaintiffs provided notice in a timely fashion—and the District never responded to this argument, so the court deems it conceded.

### 4. The Plaintiffs Have Adequately Alleged the District's Negligence

Finally, the District briefly argues that Y.F. has not adequately alleged negligence. "'To establish negligence' under D.C. law, 'a plaintiff must prove a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach.'" *Sigmund v. Starwood Urban Retail VI, LLC*, 617 F.3d 512, 514 (D.C. Cir. 2010) (quoting *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 641 (D.C. 2005) (en banc) (quoting *Potts v. District of Columbia*, 697 A.2d 1249, 1252 (D.C. 1997))). When a plaintiff seeks to hold the defendant liable for injuries caused by the intervening criminal act of a third party, District of Columbia courts generally apply a "heightened foreseeability standard," *Bd. of Tr. of the Univ. of D.C. v. DiSalvo*, 974 A.2d 868, 871 (D.C. 2009); *Bruno v. W. Union Fin. Servs., Inc.*, 973 A.2d 713, 719 (D.C. 2009) (per curiam), asking whether "the criminal act was so foreseeable that a duty arises to guard against it." *Sigmund*, 617 F.3d at 514 (quoting *Beretta*, 872 A.2d at 641 (quoting *Potts*, 697 A.2d at 1252 (D.C. 1997) (emphasis deleted))). The District argues that the heightened foreseeability standard should apply here and that Y.F.'s pleadings fall short of it, but Y.F. has not alleged that she was injured by criminal acts. The District points to no authority applying the heightened foreseeability standard to injuries caused by the negligent acts of third parties, which is all that Y.F. alleges. The court will therefore deny the remainder of the District's motion to dismiss.

### C. The Court Grants in Part and Denies in Part PIW's Motion to Dismiss

#### 1. Lakeisha Jordan Has Standing to Bring this Suit on Behalf of Her Daughter

Before the plaintiffs amended their complaint to state that Lakeisha Jordan is Y.F.'s mother, Am. Compl. ¶ 6, PIW argued that Ms. Jordan lacked standing because she had failed to allege any basis under which she could prosecute this suit as the next friend of Y.F. That defect has now been cured. PIW's motion to dismiss for lack of standing will be denied.

#### 2. Y.F. May Hold PIW Liable Under 42 U.S.C. § 1983

PIW argues that it cannot be held liable because (1) it did not act under color of state law and (2) because the plaintiffs have not alleged any custom or policy underlying the alleged unconstitutional violations.

##### a. Y.F. Plausibly Alleges That PIW Was a State Actor

To recover damages under § 1983, a plaintiff must generally show that the alleged deprivation was committed by a person acting under color of state law. "[A] challenged activity may be state action when it results from the State's exercise of coercive power, when the State provides significant encouragement, either overt or covert, or when a private actor operates as a willful participant in joint activity with the State or its agents." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) (internal quotation marks and citations omitted). Thus, under some circumstances, a private corporation that provides medical services pursuant to a government contract may be held liable under 42 U.S.C. § 1983. *West v. Atkins*, 487 U.S. 42, 54 (1988) (holding that "a physician employed by North Carolina to provide medical services to state prison inmates[ ] acted under color of state law for purposes of § 1983 when undertaking his duties in treating [an inmate's] injury" because "[s]uch conduct is fairly attributable to the State"); *Smith v. Corrections Corp. of Am., Inc.*, 674 F. Supp. 2d 201, 206 (D.D.C. 2009). Here, Y.F. alleges that the District contracted with PIW to provide psychiatric

9

services to the children in its care, Pls.' Opp'n at 2; Am. Compl. ¶ 44, and that PIW often made medical decisions about Y.F.'s course of treatment without seeking the consent of CFSA, which had custody of her, Am. Compl. ¶¶ 19–20.  She has provided enough factual detail for the court to infer that PIW had "been delegated a public function by the" District, *Brentwood Acad.*, 531 U.S. at 296—the function of controlling the medical care of children in the custody of the District.  And so Y.F. has adequately alleged—though she will still need to prove—that PIW may be held liable as a state actor for the purposes of § 1983.

### b. Y.F. Plausibly Alleges that Her Constitutional Injury Was Caused by PIW's Custom or Policy

Many courts have adopted the "custom or policy" requirement—which was designed for claims against a municipality—when adjudicating § 1983 claims against private entities.  *E.g.*, *Grissom v. District of Columbia*, 853 F. Supp. 2d 118, 124 (D.D.C. 2012); *Smith v. Corrections Corp. of Am., Inc.*, 674 F. Supp. 2d 201, 206 (D.D.C. 2009); *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 62–63 (D.D.C. 2007); *see also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975–76 (8th Cir. 1993) ("[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies. The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983."); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408–09 (2d Cir. 1990) ("Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses."); *Iskander v. Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) ( "[J]ust as a municipal corporation is not vicariously liable upon a theory of *respondeat superior* for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights."); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 505–06 (4th Cir. 1982) .

To hold PIW liable for her injuries, then, Y.F. must allege a corporate custom or policy of "deliberate indifference" toward her rights. This can be inferred if PIW failed "to respond to a need . . . in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).

Here, Y.F. alleges that she was improperly subjected to physical restraints and seclusion over 50 times. Am. Compl. ¶ 17. She alleges that PIW personnel failed to properly document her medical treatment, and that its personnel never conducted a formal review of her medication plan. *Id.* ¶¶ 17, 23. Moreover, Y.F. claims that PIW's personnel improperly forced her to take psychotropic medication simply because she was "angry," "aggressive," or "failed to cooperate." *Id.* ¶ 17. From these factual allegations, which spell out a plausible violation of Y.F.'s constitutional rights, the court can infer that there were "systematic problems" associated with PIW's medical treatment, as well a "fail[ure] to take reasonable actions to ensure that systematic problems were addressed." *See Smith*, 674 F. Supp. 2d at 206–07. This allegation is sufficient to survive a motion to dismiss. *Id.*

### 3. The Court Grants PIW's Motion to Dismiss Count V and Count VI

PIW argues that it cannot be held liable for either negligence *per se* or violations of the D.C. Mental Health Consumers' Rights Protection Act. By failing to respond in their opposition, the plaintiffs have conceded PIW's argument. Accordingly, the court will dismiss these two counts against PIW—but not against the District.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendants' respective motions. An order consistent with this memorandum opinion is separately issued this 7th day of June, 2013.

RUDOLPH CONTRERAS<br>
United States District Judge